IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANTHONY E. JACKSON                                                                                    PLAINTIFF

V.                                          NO. 13-2130

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Anthony E. Jackson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on July 7, 2008, alleging his inability to work since August 30, 2007, due to "Collapsed left ankle and head trauma due to car accident when I was 6 years old, lazy right eye." (Tr. 229-230, 236-238, 281, 285). An administrative hearing was held on January 22, 2010, and on June 14, 2010, the ALJ issued a decision denying all benefits to Plaintiff. (Tr. 84-85). Plaintiff requested Appeals Council review, which was granted on June 21, 2011, and the case was remanded to the ALJ. (Tr. 96-97). A second hearing was held on December 1, 2011, where Plaintiff was again represented by counsel,

and he and his mother testified. (Tr. 54-79).

By written decision dated December 21, 2011, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - disorder of the left ankle, anxiety and cognitive disorder. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can climb, balance, kneel, stoop, crouch and crawl only frequently. He can do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned by rote with few variables and little judgment involved and supervision is simple, direct and concrete.

(Tr. 16). With the help of the vocational expert (VE), the ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were jobs Plaintiff would be able to perform, such as assembler, machine tender, and inspector. (Tr. 20-21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which consider additional medical records and denied that request on March 20, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13, 16).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff makes the following arguments on appeal: 1) The ALJ did not develop the record fully and completely; 2) The ALJ's RFC determination is inconsistent with the evidence; and 3) Plaintiff cannot perform the jobs identified at Step Five. (Doc. 13).

### A. Failure to Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to

function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).

Plaintiff argues that the ALJ should have obtained a Medical Source Statement from Dr. Ted Honghiran, and a neuropsychological evaluation. Dr. Honghiran completed a Range of Motion Chart on February 5, 2010, reflecting that Plaintiff had zero degree range of motion in his left ankle for dorsi-flexion (20 is normal) and 20 degrees range of motion in his left ankle for plantar-flexion (40 degrees is normal). (Tr. 388). On March 8, 2010, Dr. Honghiran completed an Orthopaedic Examination and Report. (Tr. 389). He noted that Plaintiff's x-ray report in November of 2009 at St. Mary's Hospital showed no evidence of swelling in his left ankle and that bony structures were intact, and the report had negative findings. (Tr. 389). Dr. Honghiran reported that Plaintiff demonstrated he walked with a "slight limp" on his left leg, and that the examination of his left ankle and left foot demonstrated he had evidence of a deformity of the left foot in the form of planar valgus deformity with flat feet, with large prominence of the talus head on the medial side. (Tr. 390). The heel was in the valgus position, and he had limitation of motion in his ankle and had no dorsiflexion, and had no acute swelling of his ankle joint or his tarsal joints. (Tr. 390). The circulation and sensation was intact, and there were no signs of neurological problems. (Tr. 390). Dr. Honghiran's impression was that Plaintiff had a history of

having injured his left ankle when he was 6 years old and it had healed with some deformity in the left ankle. (Tr. 390). He also reported that Plaintiff was able to walk with full weight bearing, despite complaint of pain when he had long periods of walking. He did not find evidence of swelling or acute inflammation or acute arthritis. (Tr. 390). Dr. Honghiran believed Plaintiff's prognosis was good and that he should be able to go back to school and learn a new trade and be able to get a job with a limited amount of walking and standing. (Tr. 390).

The ALJ reported that Dr. Honghiran's report supported the finding that Plaintiff could only perform work at the sedentary exertional level, which requires no more than two hours of standing and walking in an eight-hour day. (Tr. 19).  The ALJ found that Plaintiff's complaints of pain, while not fully credible, were given some credit as well with the finding that Plaintiff could engage in postural activities only frequently, as opposed to constantly. (Tr. 19). The ALJ also found that although Plaintiff's attorney noted at the hearing that Dr. Honghiran had not included a RFC in his report, it was not necessary to send Plaintiff back to Dr. Honghiran, as his opinion was adequate to determine Plaintiff's RFC. (Tr. 19). The Court agrees.  As noted by the ALJ, the medical records that were before him were sufficient for him to be able to make a determination of Plaintiff's physical limitations.  The ALJ gave the state agency physician's opinion little weight, as they were relying on the consultative report from an APN for Dr. Stephanie Frisbie, who found Plaintiff had no physical limitations. (Tr. 18). The ALJ concluded that this opinion was inconsistent with the evidence as a whole and therefore gave them little weight.

With respect to the request for a neuropsychological evaluation, the ALJ had before him the Mental Diagnostic Evaluation dated December 7, 2009, of Dr. Terry L. Efird, Ph.D. (Tr. 374-

377), the Medical Source Statement of Ability to do Work-Related Activities (Mental) dated December 8, 2009, completed by Dr. Efird, and the Rehabilitation Initial Diagnosis and Assessment of Dr. Letitia C. Hitz, Ph.D., Psychologist, dated July 30, 2007. (Tr. 352-354). In Dr. Hitz's opinion, Plaintiff denied any history of learning problems or special educational services and was found to fall in the average range of intelligence. She diagnosed Plaintiff as follows:

>     Axis I:      Cognitive Disorder NOS
>     Axis II:     Diagnosis Deferred on Axis II
>     Axis III:    Deferred to Physician

(Tr. 354). Dr. Hitz concluded that it was likely that Plaintiff would find college classes increasingly challenging, and that a neuropsychological evaluation would provide comprehensive information regarding Plaintiff's cognitive functioning. (Tr. 354).

In Dr. Efird's December 2009 Mental Diagnostic Evaluation, it was reported that Plaintiff's ability to perform basic self-care tasks independently was endorsed, and the ability to perform household chores satisfactorily was endorsed. (Tr. 375). Dr. Efird diagnosed Plaintiff as follows:

>     Axis I:     Anxiety disorder NOS
>     Axis II:    deferred
>     Axis V:     50-60

(Tr. 377). Dr. Efird also reported that he was unclear about the degree to which mild to moderate cognitive deficits/residuals impaired his ability to perform basic work-like tasks. (Tr. 377). Therefore, a diagnosis of a cognitive disorder would not be made at that time. (Tr. 377). Dr. Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner, communicated in a fairly basic, but reasonably intelligible manner, and that he had the capacity

-7-

to perform basic cognitive tasks required for basic work like activities. (Tr. 377). He also found that Plaintiff appeared able to track and respond adequately for the purposes of the evaluation, and that there were no remarkable problems with attention/concentration during the evaluation. (Tr. 377). Dr. Efird did believe that motivation would play a large role in the area of completing tasks, although Plaintiff completed most tasks within an adequate time frame. (Tr. 377). Dr. Efird further reported that clear, obvious evidence of malingering was not noted, but that questions regarding the possibility as symptom exaggeration and/or psychosomatic reactions were suggested. (Tr. 377).

Dr. Efird also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on December 8, 2009. (Tr. 379-380). He found that Plaintiff had moderate limitations in his ability to make judgment on complex work-related decisions, had mild limitations in his ability to make judgments on simple work-related decisions, understand and remember complex instructions, and carry out complex instructions. (Tr. 379). Dr. Efird concluded that motivation would play a large role in Plaintiff's ability to interact appropriately with supervision, co-workers, and the public and respond to changes in the routine work setting. (Tr. 380).

The Court is of the opinion that Drs. Hitz and Efird's examination findings and opinions provided the ALJ with sufficient evidence to make a determination regarding Plaintiff's mental capabilities, and support the ALJ's unskilled RFC finding. In addition, the medical records as well as Plaintiff's daily activities support the ALJ's RFC findings. Plaintiff was able to take care of his personal needs, care for his young daughter and dog, clean the kitchen, do laundry, mow the lawn, drive a car, shop for groceries and clothes, watch movies, play video games, attend

church and Bible study, and complete three semesters of college. (Tr. 42, 294-298, 325, 375).

Based upon the foregoing, the Court finds the ALJ fully and fairly developed the record, and that further consultative findings were not necessary.

### B.     RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams, 393 F.3d at 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, as stated earlier, the ALJ found that Plaintiff would be able to perform unskilled, sedentary work with certain postural limitations. In making said determination, the ALJ considered and gave credence to some of Plaintiff's complaints of limitations as well as to the medical records and observations of the treating and non-examining physicians. The ALJ was correct in giving more weight to the opinions of Dr. Honghiran, Dr. Hitz and Dr. Efird, and giving little weight to the opinions of the state agency physicians. The ALJ clearly took into

consideration the mental limitations observed by Dr. Hitz and Dr. Efird, in requiring identification of unskilled jobs. Plaintiff's physical limitations noted by Dr. Honghiran were taken into consideration in the postural limitations given in the ALJ's RFC.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

**C.    Hypothetical Question Posed to the VE:**

Plaintiff argues that the ALJ's hypothetical to the VE was incomplete. In his hypothetical question to the VE, the ALJ stated:

> Q: I'd like you to assume a hypothetical person, younger individual, high school education. Cannot return to any past relevant work, no transferable skills. First, this person can do work where interpersonal contact is incidental to the work performed. Complexity of tasks is learned and performed by rote with few variables and little judgment required. Supervision required is simple, direct and concrete. Also the person is limited to occasionally lifting and carrying ten pounds, frequently less. Sit for six hours in a day. Stand and walk for two. Frequently climb, balance, crawl, kneel, stoop, and crouch. And my question is would there be work in the economy this person could do?
>
> A. Yes, sir. There would be sedentary, unskilled jobs - assembler, machine tender, inspector jobs.

(Tr. 77). The hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole, Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as an assembler, machine tender, and inspector. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question

AO72A
(Rev. 8/82)

constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 30th day of April, 2014.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)